UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH GROOM, et al.,

    Plaintiffs,

vs.                                                                       Case No. 8:08-cv-2567-JDW-EAJ

BANK OF AMERICA, et al.,

    Defendants.
_____/

## ORDER

Before the Court are Defendants' motions to dismiss (Dkts. 150, 156, 163, 164, 169) and Plaintiffs' response in opposition (Dkt. 175). Upon consideration, the motions are GRANTED.

## Background

This is a mass action brought by more than 100 individuals, trustees, and entities who invested in common or preferred stock of Transcon and/or Employee Investment Savings Accounts ("E.I.S.A.") offered by Transcon.[1] As it turned out, Transcon was nothing more than a $300,000,000 Ponzi scheme perpetrated by Louis J. Pearlman. Pearlman ultimately pled guilty to a variety of charges and was sentenced to 25 years in federal prison. A receiver was appointed over Transcon, which later filed for bankruptcy protection.

The second amended complaint devotes considerable effort to laying out Pearlman's scheme and its unraveling. But surprisingly little attention is given to the Defendants, which are the banks where Pearlman and Transcon maintained accounts, and Dun & Bradstreet ("D&B") which

---

[1] The parties refer to Transcontinental Airlines, Inc., Trans Continental Travel Services, Inc., Clean Systems Technology, Inc. and other related entities, collectively, as "Transcon."

published favorable reports on Transcon.[2] Plaintiffs assert, without elaboration or explanation, that the banks and D&B "had actual knowledge of the Pearlman Fraud or certain elements thereof." (Dkt. 87, Second Am. Compl., p. 10, ¶ 16). They contend that the banks "engaged in atypical and irregular banking practices and failed to follow their own internal procedures," but do not identify what those practices and procedures were. And Plaintiffs allege, without further development, that the banks "failed to adhere to the customary and accepted standard of care and failed to monitor incoming deposits and wires and other monies entrusted to them." (*Id.* p. 10-11, ¶¶ 15, 19). Based on these allegations, Plaintiffs claim that the banks failed to prevent Pearlman from using accounts at their institutions to accomplish his fraudulent scheme. As for D&B, Plaintiffs claim that D&B accepted Pearlman's false financial statements as true and incorporated them into its reports.

Defendants moved to dismiss Plaintiffs' claims on numerous grounds. Plaintiffs responded in opposition, addressing some, but not all, of Defendants' arguments. Plaintiffs request leave to amend certain claims, and they all but concede that two of their claims are subject to dismissal.

## Discussion

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombley*, 550 U.S. at 557).

---

[2] In responding to the motions to dismiss, Plaintiffs put forward numerous additional facts to explain or supplement the allegations in their second amended complaint. These assertions are not properly considered on a motion to dismiss. *See, e.g., Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

Rather, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Therefore, a "district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 710.

**Count I: Breach of fiduciary duty against Defendant banks**

The banks argue that they did not owe any fiduciary duties to Plaintiffs in connection with the deposit accounts held by Pearlman. The Court agrees that Plaintiffs have not alleged facts establishing the existence of a fiduciary relationship with the banks. Plaintiffs did not address this issue and did not request leave to amend this claim. Therefore, Count I will be dismissed with prejudice. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (announcing rule that a "district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court").

**Count II: Aiding and abetting breach of fiduciary duty against Defendant banks**

Under Florida law, a cause of action for aiding and abetting a breach of fiduciary duty

3

requires: "1) a fiduciary duty on the part of the wrongdoer; 2) a breach of fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. App'x 202, 207 (11th Cir. 2010); *Hogan v. Provident Life and Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009).

Plaintiffs appear to contend that Pearlman was a fiduciary (1) with respect to the funds they deposited in the E.I.S.A.s, (2) because he advised them to invest in Transcon, and (3) because he was an officer or director of Transcon. The first ground is supported by the allegations in the complaint. The others are not. Contrary to Plaintiffs' contention, an individual does not incur fiduciary duties simply by recommending an investment. *See Hines v. FiServ, Inc.*, No. 8:08-cv-2569-T-30AEP, 2010 WL 1249838, at *3 (M.D. Fla. Mar. 25, 2010). What matters is the specific relationship between that individual and the investor. *Id.* A stock broker, for example, stands in a fiduciary relationship with his or her client. *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987). But Plaintiffs have not alleged that they were in such a relationship with Pearlman. Therefore, the second claimed fiduciary duty fails. Plaintiffs' third claimed fiduciary duty likewise fails, as they have not pled facts showing that Pearlman was an officer or director of Transcon.

While Plaintiffs were arguably in a fiduciary relationship with Pearlman with respect to their E.I.S.A investments, they have not offered anything to show that the banks had knowledge of that relationship.[3] All the second amended complaint offers is the unsupported conclusion that the banks "knew, or had ample reason to know that the Plaintiffs' E.I.S.A. funds were intended by Plaintiffs

---

[3] Plaintiffs allege that the "E.I.S.A investors were led to believe that their funds would be held in segregated accounts with various banks." (Second Am. Compl., p. 5, ¶ 14). Yet, they have not offered any facts to show that the banks had knowledge that the funds were to be segregated. For example, Plaintiffs have not alleged that the banks knew the accounts were fiduciary accounts or that the banks knew of any underlying agreement between Pearlman and Plaintiffs. *See In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 263-64 (Bankr. N.D. Fla. 2003).

to be treated as trust funds" and that the banks "had notice of the fiduciary nature" of their relationship with Pearlman. (Second Am. Compl., pp. 11-12, ¶¶ 21, 32). These bare conclusions are devoid of factual support and therefore are not entitled to an assumption of truth. *See Randall*, 610 F.3d at 709-10; *BCJJ, LLC v. LeFevre,* No. 8:09-CV-551-T-17EAJ, 2011 WL 989230, at *12 M.D. Mar. 21, 2011) (The "statement that Defendant . . . knew of the underlying fraud is a conclusory allegation").

To supplement their deficient allegations, Plaintiffs rely on facts from Pearlman's plea agreement, which was attached to D&B's motion to dismiss. Specifically, Plaintiffs point to the averment that "PEARLMAN represented to . . . several federally insured financial institutions that [the Transcon companies] were successful companies in the airline business." (Dkt. 169-1 at 18-19). This non-specific statement fails to demonstrate that Defendant banks had knowledge of any fiduciary relationship at all, much less a fiduciary relationship with respect to the funds Pearlman deposited in the accounts.

Because Plaintiffs did not allege facts showing that the banks were aware of a fiduciary relationship between Plaintiffs and Pearlman, it follows that the banks had no knowledge of any breach of that duty. *See In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 264 (Bankr. N.D. Fla. 2003). Plaintiffs rely on Fla. Stat. § 673.3071, which sets forth certain circumstances under which a bank is deemed to have notice of a breach of fiduciary duty. The statute is of no help to Plaintiffs because it only applies where "the taker has knowledge of the fiduciary status of the fiduciary." Fla. Stat. § 673.3071(2). As the commentary makes clear, "[n]otice which does not amount to knowledge is not enough . . . ." Fla. Stat. § 673.3071, U.C.C. cmt. 2. Rather, "[a] person 'knows' or has 'knowledge' of a fact when the person has actual knowledge of it." Fla. Stat. § 671.201(25). Plaintiffs certainly have not alleged facts showing that Defendant banks had actual knowledge of any

5

fiduciary relationship.

Nor can Plaintiffs show that the banks were aware of a breach simply because Pearlman "deposit[ed] vast sums of money" or engaged in other unusual transactions. (Second Am. Compl., p. 10, ¶ 15). Such " 'red flags' d[o] not constitute the conscious awareness of wrongdoing necessary to maintain an aiding and abetting cause of action." *Lawrence v. Bank of America, N.A.*, No. 8:09-cv-2162-T-33TGW, 2010 WL 3467501, at *3 (M.D. Fla. Aug. 30, 2010); *see Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, No. 05-60080-Civ., 2008 WL 926513 at *6 (S.D. Fla. Mar. 31, 2008); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143-45 (S.D.N.Y. 2010), *aff'd*, 431 F. App'x 17 (2d Cir. 2011); *Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380 at *6-*7 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009).

Finally, Plaintiffs have not alleged facts showing that the banks provided substantial assistance to Pearlman's breach of fiduciary duty. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Hines*, 2010 WL 1249838, at *3. Plaintiffs contend that Defendant banks "failed to adhere to the customary and accepted standard of care and failed to monitor incoming deposits and wires and other monies entrusted to them" and that Pearlman's conduct "would normally have been deemed suspicious activities." (Second Am. Compl., p. 10-11, ¶ 15, 19). But an allegation of the "failure to act, absent a duty to act, is not substantial assistance." *Hines*, 2010 WL 1249838, at *4. And Plaintiffs have not pled sufficient facts to demonstrate that Defendant banks owed such a duty.

Plaintiffs' assertion that the Defendant banks "made it possible for Pearlman and his cohorts to deposit vast sums of money" is likewise insufficient. (Second Am. Compl., p. 10, ¶ 15). This is, at most, a conclusory allegation that the banks permitted a customer to engage in suspicious transactions, which fails to establish substantial assistance. *Lawrence*, 2010 WL 3467501, at *4;

*Rosner*, 2008 WL 5416380 at *12-13. Equally insufficient is Plaintiffs' apparent contention that Pearlman furthered his Ponzi scheme with funds borrowed from the banks. There is no allegation that the banks knew Pearlman would use the borrowed funds in his fraudulent scheme.

On these facts, Plaintiffs have not stated a claim for aiding and abetting a breach of fiduciary duty.

**Count III:    Aiding and abetting common law fraud against all Defendants**

A cause of action for aiding and abetting fraud requires: "1. There existed an underlying fraud; 2. The defendant had knowledge of the fraud; 3. The defendant provided substantial assistance to advance the commission of the fraud." *ZP No. 54 L.P. v. Fidelity & Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005). In cases where a bank customer has perpetrated a fraudulent scheme, courts have widely held that the bank is not liable for aiding and abetting unless the bank has actual knowledge of its customer's wrongful activity. *See, e.g., Lawrence*, 2010 WL 3467501, at *3; *Hines*, 2010 WL 1249838, at *4; *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 F. App'x 17, 19 (2d Cir. 2011); *Rosner v. Bank of China*, 349 F. App'x 637, 638-40 (2d Cir. 2009).

Count III fails for many of the same reasons as Count II. Apart from conclusory assertions, Plaintiffs have not provided any facts showing that the banks had knowledge of Pearlman's scheme. *See Rosner*, 349 F. App'x at 639 (conclusory statement that a defendant "actually knew" was insufficient to support an aiding and abetting claim where the facts in the complaint only suggested that the defendant "should have known that something was amiss"). And as discussed, substantial assistance is not established by allegations that Defendants failed to act or by conclusory assertions that the banks permitted Pearlman to engage in suspicious transactions. Plaintiffs therefore failed to state a cause of action for aiding and abetting fraud.

**Count IV:** Aiding and abetting violation of the Florida Securities and Investor Protection Act against all Defendants

Plaintiffs seek damages and rescission pursuant to Fla. Stat. § 517.211(2), which provides:

> Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission, if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.

Defendants contend that they are not liable under the statute because they did not sell any securities and were not a director, officer, partner, or agent of a seller. Plaintiffs did not address this argument.

Courts have found that § 517.211's reach extends no farther than the categories of persons identified in paragraph 2. *E.g.*, *Schneberger v. Wheeler*, 859 F.2d 1477, 1480 (11th Cir. 1988); *Hines*, 2010 WL 1249838, at *7 (because liability is restricted to the persons identified in the statute, "there can be no separate claim for aiding and abetting a violation of the FSIPA"). While Plaintiffs could argue that Defendant banks were agents which "personally participated or aided" the sales, "[t]hat language implies some activity in inducing the purchaser to invest." *Nichols v. Yandre*, 9 So. 2d 157, 160 (Fla. 1942); *see also Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 828 (11th Cir. 2006) ("The law requires some personal activity and involvement in the sale."). As Plaintiffs have not alleged that the banks played any part in the sale of the investments or that they fell within any other category of persons identified in paragraph 2, Count IV is due to be dismissed.

**Count V:** Commercial bad faith against Defendant banks

Defendant banks argue that Florida does not recognize a cause of action for commercial bad faith. *See Kuhlman v. Crawford & Co.*, No. 01-6036-CIV, 2002 WL 34368089, at *4 (S.D. Fla. Jan. 23, 2002) ("Upon a review of Florida law, there is no case that allows a 'bad faith' claim absent a

contractual relationship."). Plaintiffs made no effort to identify a single Florida case addressing a claim for commercial bad faith. And independent research has not uncovered any such cases.

In jurisdictions that recognize a cause of action for commercial bad faith, "a plaintiff must allege: (1) a scheme or acts of wrongdoing; together with either: (2) allegations of the bank's actual knowledge of the scheme or wrongdoing that amounts to bad faith; or (3) allegations of complicity by bank principals in alleged confederation with the wrongdoers." *MLSMK Inv. Co.*, 737 F. Supp. 2d at 145 (quotation omitted). Therefore, "commercial bad faith is alleged when a 'bank acts dishonestly—where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in the fraudulent scheme.' " *Id.* (quoting *Prudential–Bache Sec., Inc. v. Citibank, N.A.*, 73 N.Y.2d 263, 539 N.Y.S.2d 699, 536 N.E.2d 1118, 1125 (1989)).

To the extent that a commercial bad faith cause of action is cognizable in Florida, Plaintiffs' claim necessarily fails because the second amended complaint is devoid of facts demonstrating that Defendant banks had actual knowledge of Pearlman's fraudulent scheme. Plaintiffs offered nothing more than unsupported conclusory allegations of actual knowledge, which are not entitled to an assumption of truth. *See Randall*, 610 F.3d at 709-10. Accordingly, Count V is due to be dismissed.

**Count VI:** **Aiding and abetting violation of Florida's Uniform Fraudulent Transfer Act against Defendant banks**

The banks argue that Florida law does not permit a claim for aiding and abetting a violation of the Uniform Fraudulent Transfer Act. The Court agrees. *See Freeman v. First Union Nat. Bank*, 865 So. 2d 1272, 1276-77 (Fla. 2004). Plaintiffs neither addressed this argument nor requested leave to amend. Count VI will therefore be dismissed with prejudice. *Wagner*, 314 F.3d at 542.

**Count VII:** **Grossly negligent and reckless misrepresentations against D&B**

Plaintiffs have clarified that, notwithstanding its label, Count VII is a claim for negligent

misrepresentation. In *First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 15 (Fla. 1990), the Florida Supreme Court adopted § 552 of the Restatement (Second) of Torts, which provides in relevant part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

As the Restatement makes clear, a defendant is not liable to anyone who could potentially receive a defendant's representations. Rather, in the absence of privity, a defendant will only be liable to "those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely." *Max Mitchell*, 558 So. 2d at 15. This, of course, is "distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it." Restatement § 552, cmt. h. Therefore, a defendant will not be liable where he or she "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [it], on the part of anyone to whom it may be repeated." *Max Mitchell*, 558 So. 2d at 16.

In the second amended complaint, Plaintiffs do not allege that they were D&B customers who

ordered the reports on Transcon or that D&B intended for Plaintiffs to rely on the reports. Plaintiffs simply allege, "[i]t was reasonably foreseeable that investors such as Plaintiffs would rely on D&B's ratings in making their investment decisions." (Second Am. Compl., p. 17, ¶ 68). However, as the Florida Supreme Court observed, "section 552 clearly forecloses the extension of liability to a reasonably foreseeable test." *Max Mitchell*, 558 So. 2d at 15 (citing Restatement § 552, illus. 10).

Plaintiffs argue that "there was no other reason for Pearlman to obtain ratings reports from D&B than for the purpose of selling his sham securities to investors, such as the Plaintiffs." (Dkt. 175 at 17). But they have not identified (and they certainly have not alleged) any facts to show that D&B had actual knowledge of how Pearlman would use its reports. At best, Plaintiffs' claim is that D&B "should have known" or "must have known" that the reports would be supplied to Plaintiffs and other investors.

The Florida Supreme Court flatly rejected this type of claim:

> [W]e are persuaded by the wisdom of the rule which limits liability to those persons or classes of persons whom [a defendant] 'knows' will rely on his opinion rather than those he 'should have known' would do so . . . .

*Max Mitchell*, 558 So. 2d at 15. And as one court aptly observed, an allegation that "Defendants 'must have known' is equivalent to the 'should have known' reasonably foreseeable standard that the Florida Supreme Court declined to adopt." *Box Office Entmt., LLC v. Brian D. Gordon, CPA, P.A.*, No. 05-21010-CIV, 2007 WL 1362898, at *5 (S.D. Fla. May 9, 2007).

Further, Defendants are correct that Plaintiffs failed to allege reliance, as required by § 552. Plaintiffs did allege that they "were presented with copies of the D&B reports" or were informed of the reports' contents. (Second Am. Compl., p. 17, ¶ 71). And they did allege that it was "reasonably foreseeable that investors such as Plaintiffs would rely on D&B's ratings." (*Id.*, p. 17, ¶ 68). But

Plaintiffs never alleged that they did, in fact, rely on the D&B reports in making their investment decisions. Count VII is therefore due to be dismissed.

**Count VIII: Conversion against Defendant banks**

Plaintiffs allege that the banks are liable for conversion because they "accepted and deposited [Plaintiffs'] checks made out to Pearlman" and that "the defendant banks . . . deposited the instruments into Pearlman's personal accounts or accounts other than those held in his role as fiduciary, rather than the fiduciary accounts to which the instruments were directed." (Second Am. Compl., p. 17, ¶ 75). As Plaintiffs' response brief makes clear, their claim is based on Florida's Uniform Commercial Code, which provides, "[a]n instrument is also converted if . . . a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." Fla. Stat. § 673.4201(1). While this provision would arguably support a conversion claim against the banks, it is one that Plaintiffs are barred from prosecuting.

Section 673.4201(1) expressly provides:

> An action for conversion of an instrument may not be brought by:
>
> (a) The issuer or acceptor of the instrument . . . .

"Issuer" is defined as "a maker or drawer of an instrument." Fla. Stat. § 673.1051(3). And from the allegations in the second amended complaint, it is clear that Plaintiffs were the drawers or makers of the checks that the banks allegedly converted. Plaintiffs therefore have no cause of action under Fla. Stat. § 673.4201(1). *See Metz v. Unizan Bank*, 649 F.3d 492, 497 (6th Cir. 2011) (interpreting same provision of Ohio's U.C.C. and holding Ponzi scheme victims could not recover against bank which received and deposited their checks); *Cheese & Grill Restaurant, Inc., v. Wachovia Bank, N.A.*, 970 So. 2d 372, 375 (Fla. 3d DCA 2007) ("The drawer or maker of a check (here, the Restaurant), 'has no right of direct action against banks, other than drawee bank [here, WAMU],

which honor a check on a forged or unauthorized endorsement.' ") (quotation omitted); Fla. Stat. § 673.4201, U.C.C. cmt. 1 ("There is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than property of the drawer."). Plaintiffs' conversion claim therefore must be dismissed.

## Repleading

As Plaintiffs concede, several claims are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). For those claims, Plaintiffs must identify:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quotation omitted).

Plaintiffs filed a shot-gun complaint which does not come close to satisfying these requirements. Each count incorporates, and is based on, the same supporting set of facts. That set of facts fails to identify with any specificity "the who, what, when, where, and how of the allegedly false statements." *Id.* Plaintiffs simply lump all Defendants together and, in doing so, accuse every Defendant of identical conduct. This does nothing to "inform each defendant of the nature of his alleged participation in the fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir.1997)). In repleading, Plaintiffs shall take care to separately allege specific facts showing how each Defendant is liable in each claim.

## Conclusion

Accordingly, Defendants' motions to dismiss (Dkts. 150, 156, 163, 164, 169) are

13

GRANTED.[4] Counts I and VI of the second amended complaint are dismissed with prejudice. Counts II, III, IV, V, VII, and VIII are dismissed without prejudice. Plaintiffs are granted leave to file a third amended complaint within 21 days.

DONE AND ORDERED this 9th day of January, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of record

---

[4] SunTrust's argument that subject matter jurisdiction is lacking because Plaintiffs failed to show common questions of law and fact is rejected, as is its contention that Plaintiffs did not allege sufficient facts to show the amount in controversy. (See Second Am. Compl., p. 8, ¶ 33). SunTrust's and TD Bank's arguments that federal courts lack original jurisdiction over 'mass actions' (even though removal jurisdiction is clearly authorized) are denied without prejudice to being raised in a motion to dismiss the third amended complaint. While the statute is ambiguous, see Lowery v. Alabama Power Co., 483 F.3d 1184, 1200 n. 41 (11th Cir. 2007), SunTrust's and TD Bank's briefing has not convinced the Court that Congress intended to restrict federal jurisdiction over mass actions to cases which were originally filed in state court.