UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH GROOM, et al.,

    Plaintiffs,

vs.                                              Case No. 8:08-cv-2567-JDW-EAJ

TD BANK, N.A. d/b/a MERCANTILE BANK,

    Defendant.
_____/

## ORDER

Before the Court are Mercantile Bank's motion to dismiss (Dkt. 180) and Plaintiffs' response in opposition (Dkt. 183). Upon consideration, the motion is DENIED.

To survive a motion to dismiss, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In the Third Amended Complaint, Plaintiffs have reduced this action to a single claim against Mercantile Bank for aiding and abetting fraud. To support their claim, Plaintiffs must allege facts showing that: "1. There existed an underlying fraud; 2. The defendant had knowledge of the fraud; 3. The defendant provided substantial assistance to advance the commission of the fraud." *ZP No. 54 L.P. v. Fidelity & Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005); *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, ----, 2012 WL 89904, at *2 (11th Cir. 2012).[1]

According to the allegations of the Third Amended Complaint, Plaintiffs invested in a massive Ponzi scheme perpetrated by Louis J. Pearlman. Plaintiffs allege that Mercantile learned of

---

[1] Mercantile's argument that Florida does not recognize a cause of action for aiding and abetting fraud is unpersuasive. In *ZP No. 54 L.P.*, Florida's Fifth District Court of Appeal acknowledged that "aiding and abetting a fraud may well be a valid cause of action in Florida." 917 So. 2d at 371. And as correctly noted by Plaintiffs, numerous courts have agreed that such a claim is recognized in Florida. *See, e.g., Matheson Tri-Gas, Inc. v. Sheehan*, No. 8:11-cv-401-T-23MAP, 2011 WL 1832708, at *5 (M.D. Fla. May 13, 2011).

the fraud from a company that was hired to investigate Pearlman after he failed to provide adequate financial information in conjunction with an agreement to extend the terms of Mercantile's loan(s). The investigation revealed that the accountants who prepared and audited the financial records of the Pearlman companies were not licensed or registered with any industry or government regulatory body and had no office or working telephone number. And TCA, the airline that was the centerpiece of the Pearlman companies in which Plaintiffs invested, owned few or no airplanes, was not a licensed FAA carrier, and had leases which conflicted with FAA records.

Plaintiffs further allege that notwithstanding its discovery of Pearlman's misrepresentations, Mercantile did not declare his outstanding $13 million loan balance in default but entered into a forbearance agreement with Pearlman which, under the circumstances, was allegedly in violation of regulatory requirements, industry standards, and Mercantile's internal policies. Mercantile further violated its internal policies by failing to downgrade Pearlman's line of credit and intentionally withholding information about his misrepresentations from officers of Mercantile's parent company. Mercantile's actions enabled Pearlman to obtain substitute financing to pay Mercantile, in full, before the house of cards collapsed.

Plaintiffs have alleged sufficient facts demonstrating that Mercantile was aware of the nature of Pearlman's businesses, the existence of his investors, and the false financial information which he provided to the bank and his investors. These allegations support a plausible inference that Mercantile became aware of the fraud and took action which facilitated its commission. The allegations support an inference that Mercantile, anticipating the inevitable collapse of Pearlman's Ponzi scheme, entered into the forbearance agreement to protect its own interests, in violation of regulatory requirements, industry standards, and Mercantile's internal policies. *See, e.g., Am. Bank of St. Paul v. TD Bank, N.A.*, Civil No. 09–2240 ADM/TNL, 2011 WL 1810643, at *8 (D. Minn.

May 9, 2011); *Metz v. Unizan Bank*, No. 5:05 CV 1510, 2008 WL 2017574, at *18 (N.D. Ohio May 7, 2008). By entering into the forbearance agreement after discovering the fraud, Mercantile not only facilitated the continuance of the Ponzi scheme for an additional 15 months, it also ensured that the $13 million was paid to Mercantile, rather than to any investors or other victims. By enabling the fraud to continue and ensuring that it was paid before the scheme unwound, Mercantile could be found to have been the proximate cause of at least some of Plaintiffs' losses.

Mercantile argues that Plaintiffs fails to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Court disagrees. Plaintiffs specifically identified the documents that Pearlman provided, the false representations contained therein, the manner in which the misrepresentations misled Plaintiffs, and what Pearlman obtained as a consequence.[2]

Finally, Mercantile argues that each Plaintiff's claim should be severed into a separate action under Fed. R. Civ. P. 21. "The decision to separate parties or claims is a case management determination 'peculiarly within the discretion of the trial court....'" *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 558 (1st Cir. 2003) (quotation omitted). Given the claims in this action, severance would not serve any useful purpose. Mercantile is alleged to have engaged in a single course of conduct which harmed each Plaintiff. It is of no consequence that not all Plaintiffs selected the same Pearlman investment vehicle, that different securities brokers were used, or that Plaintiffs may have relied on different false representations. All Plaintiffs allege that they were defrauded by Pearlman's Ponzi scheme. And Plaintiffs' claims against Mercantile will focus on identical inquiries: whether Mercantile had actual knowledge of Pearlman's Ponzi scheme and whether Mercantile substantially assisted the scheme. Plaintiffs were properly joined in this action, and severing their claims into

---

[2] To the extent that Mercantile does not seriously contest the "circumstances constituting the fraud" of Pearlman's Ponzi scheme, its Rule 9(b) argument is rather disingenuous. Pearlman's fraud was made a matter of public record in his plea agreement, and Mercantile is unquestionably aware of the surrounding circumstances.

more than 100 separate actions would be a clear waste of precious judicial resources.[3]

## Conclusion

Accordingly, Mercantile Bank's motion to dismiss (Dkt. 180) is DENIED. Plaintiffs shall answer the Third Amended Complaint within 14 days. The stay on discovery is lifted. The parties shall file a joint case management report within 21 days.

DONE AND ORDERED this 27th day of April, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of record

---

[3] As in their prior motion, Mercantile again questions the propriety of exercising original jurisdiction over a mass action commenced in federal court, rather than removed from state court. *See* 28 U.S.C. § 1332(d)(11) (providing for removal jurisdiction over mass actions). Mercantile's previous argument was denied without prejudice, due to its lack of citation to authority showing "that Congress intended to restrict federal jurisdiction over mass actions to cases which were originally filed in state court." (Dkt. 176, n.4). Mercantile has not come forward with any additional support for its unconvincing position and therefore its argument is rejected for the same reason.